UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

LADON D. MOORE,

                Plaintiff,

v.

UNKNOWN KAMARDT, et al.,

                Defendants.
_____/

Case No. 1:23-cv-1213

Honorable Phillip J. Green

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 1, PageID.16.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ."

2

28 U.S.C. § 636(c).  Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to th[e] action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

<u>**Discussion**</u>

## I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Bellamy Creek Correctional Facility (IBC) in Ionia, Ionia County, Michigan.  The events about which he complains occurred at that facility. Plaintiff sues IBC Warden Unknown Macauley, IBC Grievance Coordinator N. Brooke, Unknown Party(ies) #1 (described as IBC Transportation Corrections Officers working on August 29, 2023, IBC Store Supervisor Unknown Kamradt, and Unknown Party(ies) #2 (described as IBC Storekeepers/Workers).[2] (Compl., ECF No. 1, PageID.1, 3.)

### A.    Kamradt et al. (storekeepers)

Plaintiff alleges that, on January 25, 2023, he received a "store bag" from "IBC Storekeeper Kamradt et al." (*Id.*, PageID.4.)  Plaintiff reports that the items inside were half-full and the store bag was clearly resealed.  (*Id.*)  Plaintiff filed a grievance regarding the matter on that same day.  (*Id.*)  Defendant Brooke denied the grievance. (*Id.*)  Defendant Macauley denied Plaintiff's Step II grievance appeal.  (*Id.*)  MDOC Grievance Director Unknown Russell—not a defendant—denied Plaintiff's Step III appeal.

---

[2] Plaintiff's pleadings are somewhat difficult to follow, even with regard to identification of the parties. Particular difficulty is posed by Plaintiff's identification of Defendant #1 as "Kamradt, et. al (storekeepers)." (Compl., ECF No. 1, PageID.1– 2.) Plaintiff makes no allegations against Defendant Kamradt, the store supervisor, specifically. Because Plaintiff's allegations refer to Kamradt et al. (storekeepers), the Court will consider the allegations as referring to the entire group of storekeepers, including Kamradt.

Plaintiff contends that, since filing the grievance, Kamradt, et el. (storekeepers) have tampered with and contaminated all of Plaintiff's secure packages and store bags with some type of chemical agent or bacteria.  (*Id.*)  For example, on March 23, 2023, Plaintiff complained that the tampering/contamination has resulted in serious medical issues, including "his stomach . . . start[ed] growling, bubbling, cramping, pulling inside itself and farting uncontrollably." (*Id.*, PageID.5.) The candies put him instantly asleep and the chips were only half full.  (*Id.*)

Plaintiff submitted a grievance regarding the matter. Defendant Brooke denied the grievance, Defendant Macauley denied the Step II appeal, and Russell denied the Step III appeal. (*Id.*)

On March 22, 2023, Plaintiff wrote another grievance on Kamradt, et al. (storekeepers) about not refunding $2.58 for "hot" corn chips "done in retaliation." (*Id.*)  Defendant Brooke denied the grievance, Defendant Macauley denied the Step II appeal, and Russell denied the Step III appeal.  (*Id.*)

On May 31, 2023, Plaintiff wrote Kamradt, et al. (storekeepers) complaining about the contaminants in his food and candies.  (*Id.*, PageID.6.)  He pointed out the same symptoms that followed the March delivery and added "swellings of lips and jaws, and severe pains in neck to back of left ear and blurred visions." (*Id.*)  Plaintiff filed a grievance regarding the matter.  (*Id.*)  Defendant Brooke denied the grievance, Defendant Macauley denied the Step II appeal, and Russell denied the Step III appeal. (*Id.*)

On June 14, 2023, Plaintiff received a secure package from Kamradt, et al. (storekeepers). (*Id*.) The food items were half-full and the candies had less than half of the normal quantity. (*Id*.) Plaintiff confronted Kamradt, et al. (storekeepers), they did not deny his allegations. (*Id*.) He refused to take the package and demanded a full refund. (*Id*.) Plaintiff filed a grievance regarding the matter. (*Id*.) Defendant Brooke denied the grievance, Defendant Macauley denied the Step II appeal, and Russell denied the Step III appeal. (*Id*., PageID.6–7.)

On an unspecified date in July 2023, the items in Plaintiff's secure package caused the same symptoms he had suffered previously and "the coffee wasn't even coffee . . . [i]t was extremely light in color and had no caffeine taste." (*Id*., PageID.7.) Plaintiff filed a grievance regarding the matter. (*Id*.) Defendant Brooke denied the grievance, Defendant Macauley denied the Step II appeal, and Russell denied the Step III appeal. (*Id*.)

On August 26, 2023, Plaintiff went for an "EGD" and colonoscopy relating to the symptoms described above. (*Id*.) The tests revealed that Plaintiff's symptoms were not caused by diseases or gastrointestinal issues. (*Id*.) Plaintiff suggests that such results confirm that he must have digested "contaminates." (*Id*., PageID.7–8.)

Plaintiff lists the symptoms and lasting side-effects he suffered:

1. My forearms would swell up without warnings;

2. I get severe stiffness and pain in the back of my neck that travels behind my left ear;

3. My calf became harden[ed] and painful and often my right leg would not completely limp and have no mobilities or feeling when I left it up;

6

4. My feet turns ice old and then I can't walk on it effectively without experiencing pain(s);

5. Unusual tightness and pain around heart muscles, shortness of breath and my clavicle would have these burning sensation at times;

6. Lips and jaws swelling up out of nowhere;

7. My fingertips would suddenly become flaccid and fingers ashy white. Then locks-up and become[s] difficult to make a fist or flexing as if I suddenly developed some type(s) of arthritic conditionings;

8. Always extremely lymphatic with feverishness;

9. Developed extreme spasmodic all over back;

10. The bubbling, growling, and cramping and farting is non-stop daily and pulling of my insides;

11. My vision goes from clear to blurry all day long and I wear glasses and pounding headaches.

(*Id.*, PageID.8–9.) Plaintiff reports that these symptoms "were unlimited from March 22, 2023 to July, 2023, and part(s) of August 2023." (*Id.*, PageID.9.)

On October 16, 2023, Plaintiff again ordered a secure package.  The symptoms "increased 10 times worse." (*Id.*)  Plaintiff notes that he also suffers these symptoms after he eats food and water from the chow hall.  (*Id.*)  Plaintiff contends that Kamradt et al. (storekeepers) provided him inadequate portions and contaminated product in retaliation for Plaintiff's January 2023 grievance in violation of Plaintiff's First Amendment rights.  Moreover, Plaintiff claims that by providing the contaminated products, Kamradt et al. (storekeepers) were deliberately indifferent to Plaintiff's health and safety in violation of Plaintiff's Eighth Amendment rights.  (*Id.*, PageID.10.)  Plaintiff seeks compensatory, nominal, and punitive damages.  (*Id.*)

## B.    IBC Transportation Corrections Officers on August 29, 2023

Plaintiff's allegations against the transportation corrections officers begin on page 11 of his complaint.  Plaintiff alleges that on August 29, 2023, Officer Smith (not a defendant) came to Plaintiff's cell and told Plaintiff to put on his "state blues" because transportation officers were waiting to take Plaintiff on a medical offsite visit.  (*Id.*, PageID.11.)  Plaintiff refused that request because he did not have any "medical offsites."  (*Id.*)

Plaintiff claims that the Defendant transportation officers requested Plaintiff for an offsite because Plaintiff had previously filed a grievance against transportation officers for intentionally delaying an offsite visit to Plaintiff's cardiologist and, as a result, Plaintiff's appointment was cancelled.  (*Id.*, PageID.12.)  Plaintiff notes that transportation staff were reprimanded for that failure.  (*Id.*)  Plaintiff claims that he now fears for his health and safety because of the Defendant transportation officers' attempt to take Plaintiff on an unauthorized offsite visit.  (*Id.*)

Plaintiff filed a grievance regarding the matter.  (*Id.*)  Defendant Brooke denied the grievance, Defendant Macauley denied the Step II appeal, and Russell denied the Step III appeal.  (*Id.*)

Plaintiff claims that the transportation officers' attempt to take Plaintiff on an unauthorized offsite visit was retaliatory for Plaintiff's grievance in violation of his First Amendment rights.  (*Id.*, PageID.13.)  Plaintiff seeks compensatory, nominal, and punitive damages.

### C.    Grievance Coordinator Brooke

Plaintiff claims that Defendant Brooke denied Plaintiff access to the grievance remedy and denied Plaintiff's grievances in violation of Plaintiff's First Amendment rights.  (*Id.*, PageID.13–14.)  Plaintiff seeks compensatory, nominal, and punitive damages against Defendant Brooke.

### D.    Warden Macauley

Plaintiff claims that Defendant Macauley is responsible for all of the wrongs perpetrated by the other Defendants because Macauley failed to "properly supervise" them.  (*Id.*, PageID.14–15.)  Plaintiff seeks compensatory, nominal, and punitive damages against Defendant Macauley.

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 679.    Although  the  plausibility  standard  is  not  equivalent  to  a  "'probability

requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Plaintiff alleges that Defendants have violated his First and Eighth Amendment rights.

## III.   Discussion

### A.   Kamradt et al. (storekeepers)

#### 1.   Retaliation

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff

must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The filing of a nonfrivolous prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith*, 250 F.3d at 1037; *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). Plaintiff reports that he filed a grievance against Kamradt et al. (storekeepers) on January 25, 2023.[3] (Compl., ECF No. 1, PageID.4.) It is not clear who, in particular, Plaintiff was grieving, or who knew about the grievance. Nonetheless, Plaintiff has adequately alleged protected conduct.

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The

---

[3] Plaintiff alleges that "[p]rior to [his] January Grievance against Kamardt et al. (storekeepers) [he] never had any issues of contamination of [his] store foods and candies at IBC." (Compl., ECF No. 1, PageID.19.) Based on Plaintiff's return mailing addresses in other cases, however, Plaintiff had only been housed at IBC for a few weeks when he filed the January grievance. *See* First Am. Compl. and Signature Page, *Moore v. Johnson*, No. 1:22-cv-782 (W.D. Mich.) (ECF Nos. 23, 25).

adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted.   The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence.  *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original).  Certainly, contaminating a prisoner's food would be capable of deterring a person of ordinary firmness from exercising his First Amendment rights.

Plaintiff's allegations fall short, however, at the third step.  At the third step, Plaintiff must allege facts that would support an inference that the person who allegedly contaminated Plaintiff's food did so to retaliate against him for filing a grievance.  Because Plaintiff never identifies the individual against whom he filed his grievances or the individual who purportedly contaminated his food, it is impossible to infer any relationship between the two events other than the temporal relationship between events that occur in sequence.

Even the temporal relationship is not particularly close.  There are two months between Plaintiff's January grievance and the alleged March contamination.  Similarly, there are two months between the March grievance and the alleged May contamination.  Plaintiff does not state when he filed the grievance related to the May contamination.  Plaintiff next complains of contaminated food received on June 14, 2023, which he grieved immediately.  Plaintiff alleges that he received more contaminated food during July.  He does not identify the date he received it or the date he filed his grievance.  Four months later, on October 16, 2023, Plaintiff alleges that he received more contaminated food.

12

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence.  *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987).  "[A]lleging merely the ultimate fact of retaliation is insufficient."  *Murphy*, 833 F.2d at 108.  "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'"  *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening) (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998)).

Plaintiff merely alleges the ultimate fact of retaliation in this action.  He has not presented any facts to support his conclusion that Kamradt et al. (storekeepers) retaliated against him because he filed a grievance against one or more of them. Accordingly, his speculative allegation fails to state a claim.

Even if Plaintiff provided sufficient factual detail to support an inference of a retaliatory motive, his decision to name as a defendant Kamradt et al. (storekeepers) makes it impossible to properly state this claim.  The Sixth Circuit considered the viability of a retaliation allegations against a group in *Boxill v. O'Grady*, 935 F.3d 510 (6th Cir. 2019):

Boxill has nevertheless failed to state a plausible retaliation claim against Brandt, Glaeden, Green, or Shaw. These allegations suffer from the same flaw: Boxill does not state facts specific to those Defendants. Her claims rest on broad, conclusory allegations that the "Defendants" diminished her job responsibilities; but she offers no facts to support a reasonable inference that any of these Defendants individually took such an action, much less that he or she did so in response to Boxill's protected speech. Summary reference to a single, five-headed "Defendants" does not support a reasonable inference that each Defendant is liable for retaliation. *See, e.g., Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011) ("This Court has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008))).

*Boxill*, 935 F.3d at 518.  Plaintiff's allegations against Kamradt et al. (storekeepers) likewise identifies a group and then fails to provide facts that demonstrate what each defendant did to violate the asserted constitutional right.  Therefore, Plaintiff's allegations do not support a reasonable inference that each person in the group is liable for retaliation.

## 2.    Deliberate Indifference

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes.  Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency."  *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981).  The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain."  *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346).  The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities."  *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596,

600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a

15

substantial risk of serious harm." *Id.* at 842.  "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836.  "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

Plaintiff claims that "Kamradt et al. (storekeepers) has been tampering [with] and contamin[at]ing all my secure packages and store bags foods and candies with some type of chemical agents or bacteria or bacterium et al in retaliation against [Plaintiff] for filing grievances." (Compl., ECF No. 1, PageID.4.)  Accepted as true, knowingly contaminating a prisoner's food with chemicals or bacteria that caused serious symptoms certainly suggests a deliberate indifference to the prisoner's health and safety.   Nonetheless, Plaintiff's deliberate indifference allegations suffer the same flaw as his retaliation allegations: "[s]ummary reference to a single, five-headed "Defendants" does not support a reasonable inference that each Defendant is liable." Accordingly, the Court concludes that Plaintiff has also failed to state a claim against Kamradt et al. (storekeepers) for violation of the Eighth Amendment.

### B.    Transportation Corrections Officers

Plaintiff claims that, on August 29, 2023, two unknown corrections officers intended to take Plaintiff on a medical offsite visit even though no such visit had been scheduled.   Plaintiff contends the officers made the attempt in retaliation for Plaintiff's filing of a grievance against transportation officers earlier in the year.

As noted above, to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith*, 250 F.3d at 1032.

Plaintiff reports that he filed a grievance against transportation officers who failed to timely transport him to an appointment on February 10, 2023. The filing of a nonfrivolous prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith*, 250 F.3d at 1037; *Herron*, 203 F.3 at 415.

With regard to adverse action, it is not clear that being called out for an off-site medical appointment would deter a person of ordinary firmness from participating in protected conduct. Moreover, even if being called out for an off-site medical appointment was an adverse action, Plaintiff offers no facts to show that the call out was retaliatory. The call out occurred several months after the grievance. Moreover, Plaintiff does not allege that the officers that called Plaintiff out on August 29 were the same officers that caused Plaintiff to be late for the appointment on February 10. Plaintiff does not identify the officers involved in either incident.

17

"[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580. Plaintiff offers nothing more than the word "retaliation" here. Accordingly, he has failed to state a First Amendment retaliation claim against the transportation officers.

### C.    Defendant Brooke

Plaintiff contends that Defendant Brooke violated Plaintiff's First Amendment rights by denying Plaintiff access to the grievance remedy and by denying Plaintiff's grievances. Plaintiff does not specifically mention his Fourteenth Amendment due process rights, but such claims usually go hand in hand with the First Amendment claim Plaintiff has raised.

The elements of a procedural due process claim are (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

The courts have repeatedly held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy*, 30 F. App'x 568, 569–70 (6th Cir. 2002); *see also Antonelli v. Sheahan*, 81 F.3d 1422,

18

1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). And, Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Thus, because Plaintiff has no liberty interest in the grievance process, Defendant Brooke's alleged interference did not deprive Plaintiff of due process.

Plaintiff's allegations that Brooke violated Plaintiff's right to petition the government by failing to process grievances or by denying them also fails. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond). Defendant Brooke's actions or inactions also did not bar Plaintiff from seeking a remedy for his grievances. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982).

Even if Plaintiff had been improperly prevented from filing a grievance, his First Amendment right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances. *Cf. Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the

prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required).

Accordingly, Plaintiff's claims against Defendant Brooke relating to grievances are properly dismissed.

### D.    Defendant Macauley

Finally, Plaintiff contends that Defendant Macauley is liable for the wrongs of the other Defendants because he "fail[ed] to properly supervise IBC Staff." (Compl., ECF No. 1, PageID.14.)  This conclusory allegation is insufficient to show that Defendant Macauley was personally involved in the alleged violations of Plaintiff's constitutional rights. *See Iqbal*, 556 U.S. at 676 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *see also Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights).

Government officials, such as Defendant Macauley, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell*, 436 U.S. at 691; *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009).  A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002).  The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).  Moreover, § 1983 liability may not be imposed

20

simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993).

Here, Plaintiff fails to allege any *facts* showing that Defendant Macauley encouraged or condoned the conduct of his subordinates, or authorized, approved, or knowingly acquiesced in their conduct. Plaintiff's conclusory allegations of supervisory responsibility are insufficient to show that Defendant Macauley was personally involved in the alleged violations of Plaintiff's constitutional rights. Therefore, Plaintiff's claims against Defendant Macauley will be dismissed.

## Conclusion

Having conducted the review required by the PLRA, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide

whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore*, 114 F.3d at 611. Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated: January 2, 2025                    /s/ Phillip J. Green
                                          PHILLIP J. GREEN
                                          United States Magistrate Judge